# THE AVAILABILITY OF CRIME VICTIMS' RIGHTS UNDER THE CRIME VICTIMS' RIGHTS ACT OF 2004

*The rights provided by the Crime Victims' Rights Act are guaranteed from the time that criminal proceedings are initiated (by complaint, information, or indictment) and cease to be available if all charges are dismissed either voluntarily or on the merits (or if the Government declines to bring formal charges after the filing of a complaint).*

December 17, 2010

## MEMORANDUM OPINION FOR THE
## ACTING DEPUTY ATTORNEY GENERAL

The Crime Victims' Rights Act ("CVRA"), enacted as section 102 of the Justice for All Act of 2004, Pub. L. No. 108-405, 118 Stat. 2260, 2261-64 (codified at 18 U.S.C. § 3771 (2006 & Supp. III 2009)), guarantees victims of federal (and District of Columbia) crimes eight rights. *See* 18 U.S.C. § 3771(a). In connection with an effort to update the Attorney General's Guidelines for Victims and Witness Assistance, you have asked whether some or all of these rights must be made available to crime victims before the United States files charges and whether the rights no longer apply once the relevant charges are declined, dropped, or dismissed.

In 2005, this Office conducted a preliminary review of these questions and concluded that a person's status as a qualifying crime victim under the Act could reasonably be understood to commence upon the filing of a criminal complaint, and could reasonably be understood to cease if the relevant charges are declined, dropped, or dismissed. *See* E-mail for Rachel Brand et al., Office of Legal Policy, from Luke Sobota, Office of Legal Counsel (Apr. 1, 2005). That informal guidance did not foreclose the possibility that other readings of the CVRA might also be reasonable. We observed, however, that the statutory definition of "crime victim," the nature of the rights provided under the Act, and the CVRA's legislative history all suggested that the rights guaranteed by the CVRA were limited in their applicability to pending criminal proceedings. Having carefully considered written submissions by components of the Department as well as other federal law enforcement agencies, and for the reasons outlined below, we now conclude, consistent with our 2005 guidance, that the CVRA is best read as providing that the rights identified in section 3771(a) are guaranteed from the time that criminal proceedings are initiated (by complaint, information, or indictment) and cease to be available if all charges are dismissed either voluntarily or on the merits (or if the Government declines to bring formal charges after the filing of a complaint).[1]

---

[1] *See* Memorandum for John E. Bies, Deputy Assistant Attorney General, Office of Legal Counsel, from Christine A. Varney, Assistant Attorney General, Antitrust Division (Sept. 27, 2010); E-mail for John Bies, Deputy Assistant Attorney General, Office of Legal Counsel, from Karen Stevens, Acting Chief, Policy and Strategy Section, Civil Rights Division (Oct. 4, 2010, 21:06); Memorandum for John E. Bies, Deputy Assistant Attorney General, Office of Legal Counsel, from Eugene Thirolf, Director, Office of Consumer Litigation, Civil Division (Sept. 24, 2010); Memorandum for John E. Bies, Deputy Assistant Attorney General, Office of Legal Counsel, from Patty M. Stemler, Chief, Appellate Section, Criminal Division (Sept. 30, 2010); Memorandum for Jonathan Goldman Cedarbaum, Acting Assistant Attorney General, Office of Legal Counsel, from Ignacia S. Moreno, Assistant Attorney General, Environment and Natural Resources Division (Sept. 27, 2010) ("ENRD Memo"); Memorandum for John Bies, Deputy Assistant Attorney General, Office of Legal Counsel, from H. Marshall Jarrett, Director, Executive Office for United States Attorneys (Sept. 29, 2010); Office of the Assistant Attorney General,

The questions we address are limited to issues of statutory obligation under the CVRA. We express no opinion as to whether any of the rights identified in 18 U.S.C. § 3771(a) should be provided prior to the filing of a complaint (or after the dismissal of charges) as a matter of good practice, Departmental policy, or pursuant to the provisions of other victim-related statutes, such as section 503 of the Victims' Rights and Restitution Act of 1990, 42 U.S.C. § 10607 (2006).[2]

## I.

The CVRA defines a "crime victim" in relevant part as "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia." 18 U.S.C. § 3771(e). The Act states that crime victims so defined have the following rights:

> (1) The right to be reasonably protected from the accused.
>
> (2) The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused.
>
> (3) The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding.
>
> (4) The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding.

---

National Security Division, White Paper, *The Vesting of Rights Under the Crime Victims Rights Act* (Sept. 29, 2010); Memorandum for John E. Bies, Deputy Assistant Attorney General, Office of Legal Counsel, from Ronald A. Cimino, Deputy Assistant Attorney General, Tax Division (Sept. 24, 2010); Memorandum for Jonathan Cedarbaum, Acting Assistant Attorney General, Office of Legal Counsel, from Christopher H. Schroeder, Assistant Attorney General, Office of Legal Policy (Sept. 28, 2010); E-mail for John Bies, Deputy Assistant Attorney General, Office of Legal Counsel, from Rafael Alberto Madan, General Counsel, Office of Justice Programs (Sept. 29, 2010, 19:23); E-mail for John Bies, Deputy Assistant Attorney General, Office of Legal Counsel, from St. Clair Theodore, Assistant General Counsel, Federal Bureau of Investigation (Sept. 27, 2010, 2:52 PM); Memorandum for John E. Bies, Deputy Assistant Attorney General, Office of Legal Counsel, from Wendy H. Goggin, Chief Counsel, Drug Enforcement Administration (Oct. 6, 2010); E-mail for John Bies, Deputy Assistant Attorney General, Office of Legal Counsel, from Audrey J. Anderson, Associate General Counsel, Office of Legal Counsel, Department of Homeland Security (Sept. 30, 2010, 3:17 PM); E-mail for John Bies, Deputy Assistant Attorney General, Office of Legal Counsel, from Christopher B. Sterner, Deputy Chief Counsel (Operations), Internal Revenue Service, Department of the Treasury (Sept. 24, 2010, 9:22 AM). We appreciate the thoroughness and thoughtfulness of these submissions.

[2] This memorandum addresses only the CVRA. It does not address the application of other statutes providing for rights, services, or restitution for crime victims, including when such other statutes apply or who might qualify as a "victim" under them. Likewise, we were not asked, and intimate no view on, the question of what constitutes the "direct and proximate harm" necessary to qualify as a "crime victim" under the CVRA for a given offense, as opposed to the question of when such rights must be provided.

(5)  The reasonable right to confer with the attorney for the Government in the case.

(6)  The right to full and timely restitution as provided by law.

(7)  The right to proceedings free from unreasonable delay.

(8)  The right to be treated with fairness and with respect for the victim's dignity and privacy.

18 U.S.C. § 3771(a)(1)-(8).  The CVRA repealed and replaced section 502 of the Crime Control Act of 1990, Pub. L. No. 101-647, 104 Stat. 4789, 4820 (codified at 42 U.S.C. § 10606 (2000)), which appeared in a portion of that statute known as the Victims' Rights and Restitution Act of 1990 ("VRRA"), and which originally provided crime victims with a very similar list of rights.[3] (Other sections of the VRRA remain in force.)

Having identified these rights, the Act provides several avenues for their protection: by the courts, by Executive Branch officers, and finally by providing standing to victims themselves.  First, the Act states that "[i]n any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded [these rights]."  18 U.S.C. § 3771(b)(1).  Second, the Act provides that "[o]fficers and employees of the Department of Justice and other departments and agencies of the United States engaged in the detection, investigation, or prosecution of crime" shall "make their best efforts to see that crime victims are notified of, and accorded, the rights described in subsection (a)," *id.* § 3771(c)(1), and it requires "[t]he prosecutor" to "advise the crime victim that the crime victim can seek the advice of an attorney with respect to the rights described in subsection (a)," *id.* § 3771(c)(2).  Third, the Act authorizes crime victims, or their lawful representatives, as well as "the attorney for the Government," *id.* § 3771(d)(1), to assert CVRA rights by motion "in the district court in which a defendant is being prosecuted for the crime or, if no prosecution is underway, in the district court

---

[3]  The VRRA had read as follows:

> Rights of Crime Victims.— A crime victim has the following rights:
>
> (1)  The right to be treated with fairness and with respect for the victim's dignity and privacy.
> (2) The right to be reasonably protected from the accused offender.
> (3) The right to be notified of court proceedings.
> (4) The right to be present at all public court proceedings related to the offense, unless the court determines that testimony by the crime victim would be materially affected if the victim heard other testimony at trial.
> (5) The right to confer with [the] attorney for the Government in the case.
> (6) The right to restitution.
> (7) The right to information about the conviction, sentencing, imprisonment, and release of the offender.

42 U.S.C. § 10606(b)(1)-(7) (2000).  The rights provided in the VRRA applied to any victim of crime, defined in section 503 of that Act as "a person that has suffered direct physical, emotional, or pecuniary harm as a result of the commission of a crime," 42 U.S.C. § 10607(e)(2) (2006), including a crime under federal, state, or tribal law.

in the district in which the crime occurred." *Id*. § 3771(d)(3). The Act directs the district court "to take up and decide [such a motion] forthwith." *Id*. The Act provides for expedited mandamus review by the court of appeals of any decision denying relief, *id*., and it permits the Government (but not the crime victim) to assert as error on appeal any denial of a crime victim's right, *id*. § 3771(d)(4). The Act provides that a crime victim may seek to reopen a plea or a sentence in limited circumstances. *See id*. § 3771(d)(5). Finally, the Act provides that "[n]othing in this chapter shall be construed to authorize a cause of action for damages," *id*. § 3771(d)(6), and directs that "[n]othing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction." *Id*.

In addition to providing means for judicial enforcement of the rights it guarantees, the Act directs the Attorney General to "promulgate regulations to enforce the rights of crime victims and to ensure compliance by responsible officials with the obligations described in law respecting crime victims." *Id*. § 3771(f)(1). These regulations "shall . . . designate an administrative authority within the Department of Justice to receive and investigate complaints relating to the provision or violation of the rights of a crime victim," *id*. § 3771(f)(2)(A); "require a course of training for employees and offices of the Department of Justice that fail to comply with provisions of Federal law pertaining to the treatment of crime victims," *id.* § 3771(f)(2)(B); "contain disciplinary sanctions, including suspension or termination from employment, for employees of the Department of Justice who willfully or wantonly fail to comply with provisions of Federal law pertaining to the treatment of crime victims," *id*. § 3771(f)(2)(C); and "provide that the Attorney General, or the designee of the Attorney General, shall be the final arbiter of the complaint, and that there shall be no judicial review of the final decision of the Attorney General by a complainant," *id*. § 3771(f)(2)(D). Pursuant to the Act's directive, the Attorney General has promulgated regulations establishing procedures for crime victims to file complaints regarding the provision of CVRA rights or other obligations regarding crime victims provided by law, and to have such complaints adjudicated. *See* 28 C.F.R. § 45.10 (2010).

## II.

While a number of provisions in the CVRA indicate that the rights it guarantees do not apply until after the initiation of criminal proceedings, a few provisions could be read to suggest that at least some of the rights are to be provided before any charges are filed. In our view, the better reading of the Act—considering its text, structure, purpose, and legislative history—is that the rights provided by the CVRA are guaranteed only from the time criminal proceedings are initiated through a complaint, information, or indictment. *See, e.g.*, *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs. Ltd.*, 484 U.S. 365, 371 (1988) ("[s]tatutory construction . . . is a holistic endeavor"). To begin with, there are a number of textual indications that Congress was focused on providing crime victims an opportunity to participate in pending criminal proceedings; these include the use of the term "offense" in the definition of "crime victim" and the use of a number of terms—e.g., "the accused," "court proceedings," and "in the case"—in the characterizations of several of the rights in section 3771(a). The nature of the CVRA rights considered as a whole also reflects a paramount focus on ensuring that crime victims have standing and an opportunity to be heard in pending criminal proceedings involving conduct that harmed them. This focus is embodied in the enforcement mechanisms provided in the Act, which direct courts to ensure that crime victims are afforded their CVRA rights to participate in pending criminal proceedings and empower crime victims to file motions to enforce these rights

directly in such proceedings without intervening or becoming a party. The judicial enforceability of CVRA rights by victims themselves distinguishes those rights, in the main, from the rights protected in other victims' rights statutes, and counsels a construction of the Act that clearly defines the availability of the rights. The CVRA's legislative history likewise reflects the importance to Congress of ensuring that crime victims be heard in the judicial process, and that they have standing to protect their interests in such proceedings. By contrast, there is no indication in the Act or its legislative history that Congress intended to empower crime victims to initiate independent court proceedings outside the context of a pending criminal proceeding to enforce their rights under the Act, and thereby compel federal courts to adjudicate the existence of a Federal offense absent any formal charging decision by the Government, a prospect that would be in considerable tension with the Act's express disavowal of any intent to "impair . . . prosecutorial discretion." 18 U.S.C. § 3771(d)(6).

## A.

An analysis of the rights provided by the CVRA logically begins with its definition of "crime victim." Only "crime victims" are entitled to the rights articulated in 18 U.S.C. § 3771(a), the opening clause of which states that "[a] crime victim has the following rights." For the purposes of the CVRA, a "crime victim" is defined as "a person directly and proximately harmed as a result of the commission of a Federal *offense* or an *offense* in the District of Columbia." *Id.* § 3771(e) (emphasis added).[4] The CVRA's definition of "crime victim," however, does not conclusively resolve the question of when the rights afforded in section 3771(a) become available. Nevertheless, the definition's requirement that a crime victim be harmed as a result of the commission of a Federal "offense" naturally suggests that a person's status as a "crime victim" can only be determined after there has been a formal decision to charge a defendant with a particular Federal offense. Under this reading, the earliest that a "crime victim" under the Act could be identified would be upon the filing of a criminal complaint—that is, at the earliest point at which there is a sworn written statement of probable cause to believe that a particular defendant committed an identified Federal offense, *see* Fed. R. Crim. P. 4, and hence the first point at which it is possible with any certainty to identify a "crime victim" directly and proximately harmed by the commission of that offense. As our 2005 informal advice observed, before the filing of a criminal complaint, it is not clear how one ascertains whether a particular harm is the result of a "Federal offense" or some other sort of conduct that does not constitute a Federal offense.[5] Consistent with this reading, most courts to

---

[4] Hereafter, this memorandum will use "Federal offense" to refer to offenses either under federal law or the laws of the District of Columbia.

[5] This reading of the definition of "crime victim" also finds some support in the history of the CVRA's enactment. As noted, the CVRA repealed and replaced section 502 of the VRRA (codified at 42 U.S.C. § 10606 (2000)), which originally provided victims of crime with a very similar list of rights, *see supra* n. 3. The VRRA defined "victim" broadly as "a person that has suffered direct physical, emotional, or pecuniary harm as a result of the commission of a crime," 42 U.S.C. § 10607(e)(2) (2006), including the commission of a crime under federal, state, or tribal law. Rather than adopt this definition of "crime victim" in the CVRA, Congress relied on a definition that appears to be taken nearly verbatim from two prior federal victim-oriented statutes that limit rights to restitution to individuals "directly and proximately harmed" by an "offense." *See* 18 U.S.C. § 3663(a)(2) (2006 & Supp. III 2009) (defining "victim" for purposes of the Victim and Witness Protection Act of 1982 ("VWPA") as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered"); 18 U.S.C. § 3553A(a)(2) (same for purposes of the Mandatory Victims Restitution Act). Congress's apparent decision to adopt the VWPA's definition of "victim" is potentially significant insofar as it allows us to look for

consider who qualifies as a "crime victim" under the Act have declined to extend enforceable rights under the CVRA to alleged victims of conduct that did not lead to criminal proceedings.[6]

## B.

Standing alone, the CVRA's definition of "crime victim" is not dispositive of the questions you have posed. But when we consider other aspects of the Act, including the nature of the rights conferred, the enforcement mechanisms adopted, the general structure and purposes of the Act, and the Act's legislative history, they only strengthen the conclusion that the Act is best understood to confer the rights in section 3771(a) only when a direct and proximate relationship can be drawn between the victim and an underlying Federal offense with which a defendant has been charged in a federal criminal proceeding.

To begin with, the rights conferred in 18 U.S.C. § 3771(a), taken together, appear to contemplate the existence of an ongoing criminal proceeding initiated by the Government. Five of the eight rights articulated there expressly refer to or necessarily presuppose the existence of a criminal proceeding. *See id.* § 3771(a)(2), (3), (4), (6), (7). Three of these reflect the victim's right to notification of, access to, and opportunity to be heard in public court proceedings involving release, plea, sentencing, or parole. *See id.* § 3771(a)(2) ("The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused."); *id.* § 3771(a)(3) ("The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the

---

guidance to decisions interpreting that statute. *See Hughey v. United States*, 495 U.S. 411, 422 (1990) (holding that VWPA authorized restitution only for losses caused by the offense of conviction). Indeed, some courts have interpreted the CVRA based on the assumption that Congress was aware that courts had interpreted the VWPA not to apply to uncharged conduct. *See, e.g.*, *United States v. Turner*, 367 F. Supp. 2d 319, 326-27 (E.D.N.Y. 2005) ("[T]he full Congress passed the [CVRA] knowing that similar language in an earlier victims' rights bill had been interpreted *not* to refer to uncharged conduct. . . . Since the [VWPA] and the CVRA use similar definitions of 'victim,' it appears that the same reasoning would exclude victims of uncharged conduct from the class of those entitled to participatory rights under the [CVRA].") (footnote omitted). This comports with how courts have interpreted the CVRA in the context of restitution claims; in that context they have emphasized the statutory requirement of "direct and proximate harm" caused by the offense of conviction to limit the standing of alleged crime victims to assert restitution claims under the CVRA. *See In re Rendon Galvis*, 564 F.3d 170, 175-76 (2d Cir. 2009); *In re Stewart* 552 F.3d 1285, 1288-89 (11th Cir. 2008); *In re Antrobus*, 519 F.3d 1123, 1125-26 (10th Cir. 2008); *United States v. Atlantic States Cast Iron Pipe Co.*, 612 F. Supp. 2d 453, 545 (D.N.J. 2009); *United States v. Sharp*, 463 F. Supp. 2d 556, 563-64 (E.D.Va. 2006). However, insofar as restitution, unlike many of the other rights provided in section 3771(a), necessarily depends on the existence of a predicate conviction, these considerations are only suggestive.

[6] *See, e.g.*, *Turner*, 367 F. Supp. 2d at 326-27 (excluding victims of uncharged conduct from the class of those entitled to participatory rights under the Act because "the offense charged against a defendant can serve as a basis for identifying a 'crime victim' as defined in the CVRA"); *Searcy v. Paletz*, No. 6:07-1389-GRA-WMC, 2007 WL 1875802, at *6 (D.S.C. June 27, 2007) (inmate does not qualify as a "crime victim" under the CVRA where there has been a prosecutorial decision not to charge another inmate accused of attacking him); *Searcy v. Skinner*, No. 6:06-1418-GRA-WMC, 2006 WL 1677177, at *2 (D.S.C. June 16, 2006) (where Government had declined to bring a prosecution against an inmate accused of attacking plaintiff, he could not use the CVRA as basis to bring his own action against inmate). *But see United States v. BP Prods. North Am. Inc.,* No. H-07-434, 2008 WL 501321, at *11-16 (S.D. Tex. Feb. 21, 2008) (finding certain CVRA rights to apply pre-charge but construing them narrowly so as not to interfere with prosecutorial discretion).

victim heard other testimony at that proceeding."); *id.* § 3771(a)(4) ("The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding."). Two others, regarding the right to restitution and the right to proceedings free from unreasonable delay, likewise presume the existence of criminal proceedings against a defendant. *See id.* § 3771(a)(6) ("The right to full and timely restitution as provided in law."); *id.* § 3771(a)(7) ("The right to proceedings free from unreasonable delay.").

Admittedly, the remaining three rights (set out in sections 3771(a)(1), (5) and (8)) would not *necessarily* have to be limited to the period after the initiation of a criminal proceeding. Nevertheless, in our view, the CVRA is best read to contemplate judicial enforcement of these rights only once the Government has initiated a federal criminal proceeding.

We turn first to the "right to be reasonably protected from the accused." 18 U.S.C. § 3771(a)(1). Section 3771(a)(1)'s use of the term "the accused" appears to contemplate that the Government has already initiated criminal proceedings. "The accused" is a legal term of art that means a person who has been formally charged with a crime. *See* Black's Law Dictionary 25 (9th ed. 2009) ("A person who has been arrested and brought before a magistrate or who has been formally charged with a crime . . . . A person against whom legal proceedings have been initiated."); *see also Michigan v. Jackson*, 475 U.S. 625, 632 (1986) ("[A]fter a formal accusation has been made . . . a person who had previously been just a 'suspect' has become an 'accused' within the meaning of the Sixth Amendment . . . ."). The single CVRA decision of which we are aware to address this issue on the merits adopts just such a reading of "accused," finding the right to reasonable protection afforded in section 3771(a)(1) of the Act to be applicable only in the context of an ongoing criminal proceeding. *See United States v. Rubin*, 558 F. Supp. 2d 411, 420 (E.D.N.Y. 2008) ("'[A]ccused' must mean accused by criminal complaint, information or indictment of conduct victimizing the complainant. The right . . . to be 'reasonably protected from the accused' cannot have ripened before the earliest of one of these happenings.").

The context in which Congress enacted the CVRA provides an additional reason to adopt this understanding of its right to protection from the accused. Congress enacted section 3771(a)(1) against the backdrop of a pre-existing requirement in section 503 of the VRRA that, during the investigation of a crime, designated "responsible officials" at any agency "engaged in the detection, investigation or prosecution of crime," 42 U.S.C. § 10607(a), shall, "[a]t the earliest opportunity after the detection of a crime," *id.* § 10607(b), "arrange for a victim to receive reasonable protection from a *suspected offender*," *id.* § 10607(c)(2) (emphasis added). This requirement remains in force and, by its terms, can apply before the filing of criminal charges. The contrast between VRRA's continuing requirement that the Government provide victims with reasonable protection from a "suspected offender" and the CVRA's "right to be reasonably protected from the accused," 18 U.S.C. § 3771(a)(1), strengthens our conclusion that Congress elected in the CVRA to guarantee crime victims a judicially enforceable right to protection only after a formal accusation by the Government, i.e., after the initiation of criminal proceedings. This is particularly so given that the right to protection in the CVRA replaced a similar right "to be reasonably protected from the *accused offender*," 42 U.S.C. § 10606(b)(2) (emphasis added), previously provided in section 502 of the VRRA. Indeed, reading a victim's entitlement to protection under section 10607(c)(2) and under section 3771(a)(1) as co-terminous would fail to give meaning to Congress's deliberate choice to use different words in two

provisions of the same statutory scheme (as well as in what were originally two parts of the same enactment). *See, e.g.*, *Bailey v. United States,* 516 U.S. 137, 145 (1995) (holding that "a legislature is presumed to have used no superfluous words," and construing words "use" and "carry" in the same statutory scheme as having separate and non-overlapping meanings) (quoting *Platt v. Union Pac. R.R. Co.*, 99 U.S. 48, 58 (1878)).[7]

   Similarly, the wording of the CVRA's "reasonable right to confer with the attorney for the Government in the case," 18 U.S.C. § 3771(a)(5), suggests that the right is intended to apply only once the Government has initiated criminal proceedings. The phrase "in the case" implies the pendency of a judicial proceeding. *See Chavez v. Martinez*, 538 U.S. 760, 766 (2003) ("a 'criminal case' at the very least requires the initiation of legal proceedings"); Black's Law Dictionary at 243 (defining "case" as a "civil or criminal proceeding, action, suit or controversy at law or in equity"); *Blyew v. United States*, 80 U.S. (13 Wall.) 581, 595 (1871) ("The words 'case' and 'cause' are constantly used as synonyms in statutes and judicial decisions, each meaning a proceeding in court, a suit, or action."); *cf. Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1233 (3d Cir. 1994) (a "case" within the meaning of 11 U.S.C. § 1109(b) "is commenced by the filing of a petition under the Bankruptcy Code"). Congress's use of the definite article "the" in reference to the word "case" also supports the view that "the case" implies a specific adversary proceeding rather than an indefinite ongoing investigation. *Cf. Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004) (interpreting use of the definite article "the person" in a provision regarding a habeas corpus custodian to signify that there is usually only one proper custodian, and not several different ones).

---

[7] In a law review article published shortly after passage of the CVRA, one of the Act's sponsors suggested that the CVRA's right to be "reasonably protected from the accused" might apply "without regard to the existence of legal proceedings," which could be read to include before a complaint has been filed. Jon Kyl, Steven J. Twist & Stephen Higgins, *On the Wings of Their Angels: The Scott Campbell, Stephanie Roper, Wendy Preston, Louarna Gillis, and Nila Lynn Crime Victims' Rights Act*, 9 Lewis & Clark L. Rev. 581, 594 (2005). For the reasons outlined above, we think this is not what Congress intended with respect to the CVRA's judicially enforceable right to protection (as opposed, perhaps, to the protective "services" that section 503(c)(2) of the VRRA obligates the Government to provide). If this right were read to apply before the filing of charges, the CVRA would empower private citizens to go into court, in the absence of any pending charges, and seek a court order for protection, which would require a judicial determination whether the requisite elements, including the existence of a Federal offense, are present, without regard for any impact on Governmental resources or on pending and potentially confidential investigations. As we discuss more fully below, such a reading would be in tension with the long tradition of executive discretion to initiate criminal proceedings, and with section 3771(d)(6) of the Act, which directs that the Act not to "be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction." 18 U.S.C. § 3771(d)(6).

   The legislative record suggests that Congress's principal concern, beyond ensuring protection of victims during the pendency of criminal charges, was protection after a conviction to ensure the victim could be heard with respect to a determination regarding parole or early release of a convicted offender. A colloquy between two original sponsors of the bill reflects this concern:

> Ms. Feinstein: One final point. Throughout this act, reference is made to the "accused." Would the Senator also agree that it is our intention to use this word in the broadest sense to include both those *charged and convicted* so that the rights we establish apply throughout the criminal justice system?

> Mr. Kyl: Yes . . . .

150 Cong. Rec. 7304 (2004) (colloquy of Sens. Feinstein and Kyl) (emphasis added).

That the right to confer is with "*the* attorney" for the Government in the case reinforces the conclusion that the right to confer is tied to the existence of a criminal proceeding in which a Government attorney plays a lead role. Of course, attorneys for the Government may sometimes play a role during an investigation, particularly once a matter is being presented to a grand jury,[8] but typically most investigative work is done by federal agents. If the right to confer were meant to apply during investigations, it is not clear why Congress would have limited the responsibility to confer with a crime victim to the attorney for the Government, particularly since there may be many open investigations where no attorney has been assigned. Congress understood how to assign responsibilities in connection with protecting victims' rights to officials involved in the criminal justice process who were not attorneys, including responsibilities that take effect before the filing of any criminal charges, as it did in the VRRA when it specifically required designated "responsible officials" at all agencies "engaged in the detection, investigation or prosecution of crime," 42 U.S.C. § 10607(a), to provide the specified services, including, for example, a duty to ensure that victims receive "the earliest possible notice of—the status of the investigation of the crime." *Id.* § 10607(c)(3)(A). By contrast, limiting the responsibility to confer to a single Government attorney would make sense if the right to confer relates to issues that arise in the course of a criminal proceeding, such as potential release, the role of the victim as a witness in the course of the prosecution, potential plea agreements, sentencing, and restitution efforts, for which the prosecuting attorney would be the most natural party to confer with victims.

The CVRA's legislative history further bolsters our conclusion that the right to confer arises once a criminal proceeding has been commenced. Floor statements by both original sponsors of the Act in the Senate emphasize that the right to confer relates to the conduct of criminal proceedings after the filing of charges. Senator Feinstein explained that "[t]he victim of crime, or their counsel, should be able to provide any information, as well as their opinion, directly to the court concerning the release, plea, or sentencing of the accused. . . . Of course, in providing victim information or opinion it is important that the victim be able to confer with the prosecutor concerning a variety of matters and proceedings. . . . This right is intended to be expansive. For example, the victim has the right to confer with the Government concerning *any critical stage or disposition of the case*." 150 Cong. Rec. 7302 (2004) (emphasis added). Similarly, Senator Kyl stated that "[t]his right to confer does not give the crime victim any right to direct the prosecution. Prosecutors should consider it part of their profession to be available to consult with crime victims about concerns the victims may have which are pertinent to the case, case proceedings or dispositions. Under this provision, victims are able to confer with the Government's attorney about proceedings *after charging*." *Id*. (emphasis added).

Some have suggested that the right to confer should be understood to apply to plea negotiations that take place before the filing of charges. *See* ENRD Memo at 2-3. And it is true that a pre-charge negotiated plea agreement may reduce a victim's ability to provide input in a meaningful way regarding the matters addressed in the agreement. Although much of such pre-charge negotiations may relate to charging decisions that we believe are beyond the ambit of the

---

[8]  Strictly speaking, the grand jury foreperson, not an attorney for the Government, is "in charge" of proceedings before a grand jury. Fed. R. Crim. P. 6(c). Furthermore, such proceedings are confidential as a matter of law, Fed. R. Crim. P. 6(e), and the CVRA's legislative history shows that Congress did not intend to permit crime victims to attend grand jury proceedings. *See* 150 Cong. Rec. 22,951 (2004) (statement of Sen. Kyl) ("the right is limited to public proceedings, thus grand jury proceedings are excluded from the right").

right to confer, *see* 18 U.S.C. § 3771(d)(6) ("Nothing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction."), we recognize that our reading of the CVRA may in certain circumstances reduce the impact of a victim's participation in subsequent court proceedings to which the right to confer does apply. *See, e.g.*, Fed. R. Crim. P. 11(c)(1)(C) (plea agreement binding on court). Even in such a case, the CVRA would still ensure that the victim has an opportunity to be heard by the court, and by the Government, before the court accepts the plea or imposes a sentence, as well as a right to seek mandamus and attempt to have the plea set aside. And, of course, our view of what the CVRA requires in no way limits the discretion either of individual prosecutors to confer with victims about pre-charge plea negotiations or of the Attorney General to direct that prosecutors do so as a matter of Departmental policy. The question before us, though, is not whether it would be advisable as a matter of good practice or Departmental policy for Government attorneys to confer with victims pre-charge when appropriate, but whether Congress created a judicially-enforceable right for victims pursuant to which they may compel prosecutors to do so. Noting in the Act or its legislative history suggests Congress intended such a result. Accordingly, we do not believe the CVRA is best read to obligate the Government to confer with victims during such pre-charge negotiations with a criminal suspect.[9]

The eighth CVRA right is "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(8). Unlike the terms of the other seven CVRA rights, the wording of the right to fairness and dignity does not itself indicate that the right applies only once criminal charges have been filed. The concepts of "fairness," "dignity," and "privacy" are certainly implicated directly in judicial proceedings. *See, e.g.*, *Nixon v. Warner Commc'ns, Inc.* 435 U.S. 589, 602-03, 608-11 (1978) (addressing tension between privacy and common law right of public access to court records). But issues of fairness, privacy, and dignity for victims can arise during the course of a criminal investigation as well. *See BP*

---

[9] The Fifth Circuit's decision in *In re Dean*, 527 F.3d 391 (5th Cir. 2008), might be read to reach a contrary result. Determining the significance of *In re Dean* on this question, however, is complicated both by the unusual circumstances of that particular case and by the fact that the parties did not contest whether the right to confer applied pre-charge. In connection with the underlying criminal matter, shortly before the initiation of criminal proceedings against a corporate defendant, the Government first filed an *ex parte* proceeding seeking (and obtaining) a court order restricting notice to victims under the CVRA until after charges (and a plea agreement) had been filed and unsealed, arguing that this met the "reasonableness" requirements of 18 U.S.C. § 3771(a)(5) because of the practical difficulties any pre-charge notice would have entailed. *See In re Dean*, 527 F.3d at 395. In rejecting this argument, the Fifth Circuit ruled that such an *ex parte* proceeding was contrary to the provisions of the CVRA and unprecedented as a matter of law. *Id.* It is unclear whether the court's subsequent criticism of the Government's failure to confer pre-charge was simply a response to the unusual *ex parte* filing in the case or reflected a broader view that the CVRA obligates the Government to engage in such pre-charge referrals more generally. The court appeared to recognize the unique "posture of this case," and was careful not to "speculate on the applicability to other situations." *Id.* at 394. In any event, the question of whether the right to confer under the CVRA applied at all pre-charge (as opposed to the question of the reasonableness of the procedure used in that case) was not contested or briefed in the district court or on appeal. To the extent that the court of appeals in *In re Dean* held that the right to confer under the CVRA can be triggered during the initial investigative phase of the case, and that CVRA obligates the Government as a general matter to confer with crime victims during pre-charge negotiations with criminal suspects regarding a potential plea agreement, we respectfully disagree. A number of subsequent decisions do not follow *In re Dean* on this point. *See, e.g.*, *United States. v. Merkosky*, No. 1:02cr-0168-01, 2008 WL 1744762, at *2 (N.D. Ohio Apr. 11, 2008*)* (victim has rights under the CVRA only once prosecution has begun); *Rubin*, 558 F. Supp. 2d at 420 (victims' rights accrue upon filing of the indictment); *see also In re Acker*, 596 F.3d 370, 373 (6th Cir. 2010) (whether a victim has rights prior to formal charges being filed is "uncertain").

*Prods. North Am. Inc.*, 2008 WL 501321, at \*11 ("The right to be treated with fairness and with respect for the victim's dignity and privacy may apply with great force during an investigation, before any charging instrument has been filed."); *cf.* VRRA, Pub. L. No. 101-647, § 506(1), 104 Stat. 4789, 4822 (1990) ("It is the sense of Congress that the States should make every effort to adopt the following goals of the Victim of Crime Bill of Rights," including that "[v]ictims of crime should be treated with compassion, respect, and dignity throughout the criminal justice process.").

This right, however, must be considered in the context of the other rights guaranteed by the CVRA. Under the well-known canon of statutory interpretation *noscitur a sociis,* which means that "words and people are known by their companions," *Gutierrez v. Ada*, 528 U.S. 250, 255 (2000), "several items in a list shar[ing] an attribute counsels in favor of interpreting the other items as possessing that attribute as well," *Beecham v. United States,* 511 U.S. 368, 371 (1994). Similarly, here, the range of application of the first seven, more specific rights should be understood to inform the scope of the potentially more general right to fairness, dignity, and privacy afforded by section 3771(a)(8). *Cf. Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 311-12 (1961) (construing for tax purposes the term "discovery" in the phrase "exploration, discovery or prospecting" to be limited to the finding of minerals, as suggested by its association with exploration and prospecting, and therefore inapplicable to income from a patented item).

Reading the right to be treated with fairness and dignity to apply during pending criminal proceedings is consistent with the discussion concerning the right in the CVRA's legislative history. Every example of crime victims experiencing unfairness, indignities, or violations of their privacy discussed in the legislative history refers to situations occurring after the filing of charges and typically involved a deprivation of one or more of the other rights protected by the Act as well. For instance, the floor debates reflect concern with the fairness and dignity with which crime victims are treated during pending criminal prosecutions. *See, e.g.*, 150 Cong. Rec. 7296-97 (2004) (statement of Sen. Feinstein) (describing several examples of the failure to notify crime victims of critical hearings in criminal cases, as well as other instances where crime victims were problematically excluded from criminal proceedings); *id.* at 7297 ("This is not the way criminal justice should be practiced in the United States of America. The time has come to give victims of crime the right to participate in the system, the right to notice of a public hearing, the right to be present at that public proceeding, the right to make a statement when appropriate, the right to have restitution, if ordered by a judge, the right to know when your assailant or attacker is released from prison, and the right to be treated by our prosecutors and by our criminal justice system with respect and dignity."); *id.* at 7298 (statement of Sen. Kyl) ("Fair play for crime victims, meaningful participation . . . in the justice system, protection against a government that would take from a crime victim the dignity of due process—these are consistent with the most basic values of due process in our society.").[10] These statements and examples suggest that Congress was concerned with ensuring fair treatment for crime victims in the context of pending criminal proceedings, rather than creating a right that could be asserted

---

[10] In the more extensive legislative history for S.J. Res. 1, 108th Cong. (2003) (the proposed constitutional amendment for which the CVRA emerged as a statutory substitute), the numerous examples of alleged affronts to fairness, dignity, and privacy suffered by crime victims again uniformly arise from the conduct of criminal proceedings and relate to perceived failures by courts to allow a crime victim to participate meaningfully in those proceedings against the alleged victimizer. *See generally* S. Rep. No. 108-191, at 19-20, 25, 28 (2003).

independent of any criminal prosecution. For these reasons, we conclude that the right to fairness, dignity, and privacy in section 3771(a)(8) of the Act, like the other seven rights, should be understood as applying only after the filing of criminal charges against a defendant.

## C.

In addition to the nature of the rights provided, the structure and purpose of the Act, as reflected in the mechanisms provided to enforce the rights and the Act's legislative history, also support our conclusion that the rights are guaranteed only once the Government has initiated criminal proceedings. The mechanisms Congress established in the CVRA to ensure that crime victims are afforded their rights, including by providing crime victims standing to assert the rights directly, all relate to pending criminal proceedings. Three provisions of the Act ensure that crime victims are provided their rights or have standing to assert them. First, under the heading "Rights Afforded," the CVRA provides expressly that "[i]n any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded the rights described in subsection (a)." 18 U.S.C. § 3771(b)(1). This provision explicitly empowers—and, indeed, requires—the courts to afford the CVRA rights during pending criminal proceedings. Second, the Act explicitly provides crime victims the right to participate in a pending criminal proceeding without intervening or becoming a party to the litigation by filing a motion on their own behalf. *See id.* § 3771(d)(3) (providing crime victims standing to assert their rights under the Act by motion). Third, the Act provides that crime victims are entitled to seek relief by writ of mandamus from the court of appeals if the district court denies the relief sought by motion in a pending criminal proceeding. *See id.* ("If the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus.").[11] By contrast, the CVRA includes no provision for crime victims to initiate independent judicial proceedings by any mechanism, whether by private complaint or petition or otherwise, to enforce these rights. Taken together, the enforcement mechanisms provided by the CVRA appear to be designed to ensure that crime victims would have legal standing to be heard in the context of ongoing criminal proceedings against defendants who have been accused by the Government of a Federal offense.

The CVRA's legislative history likewise underscores more generally that protecting the ability of crime victims to participate in pending criminal proceedings was the primary purpose underlying the Act. Much of the impetus for enactment of the CVRA arose after the Tenth Circuit issued a decision in *United States v. McVeigh*, the prosecution of Timothy McVeigh, the bomber of the federal building in Oklahoma City, limiting the ability of victims to enforce in court their rights under the VRRA.[12] The district judge ordered the sequestration of crime victims from the trial in anticipation of hearing victim-impact statements at sentencing. The

---

[11] The Act also assigns "[t]he *prosecutor*" the responsibility to advise crime victims that they "can seek the advice of an attorney" with respect to their CVRA rights. *See* 18 U.S.C. § 3771(c)(2) (emphasis added).

[12] *See, e.g.*, 150 Cong. Rec. 7295 (2004) (statement of Sen. Feinstein) ("Nowhere was the need for this legislation made more clear than during the trials over the Oklahoma City bombing."); *see also id.* at 22,953 (statement of Sen. Kyl) ("This legislation is meant to ensure that cases like the McVeigh case, where victims of the Oklahoma City bombing were effectively denied the right to attend the trial and to avoid federal appeals courts from determining, as the Tenth Circuit Court of Appeals did, that victims had no standing to seek review of their right to attend the trial under the former victims' law that this bill replaces.").

victims and their families sought mandamus review in the Tenth Circuit, relying, *inter alia*, on the language in section 502(b)(4) of the VRRA, granting them a "right to be present at all public court proceedings related to the offense." 106 F.3d 325, 328-29 (10th Cir. 1997). The Tenth Circuit denied the mandamus petition, holding that crime victims lacked standing to enforce their rights under the VRRA in court.[13] *Id.* at 335 (declaring VRRA enforceable only through the "best efforts" of the Government); *see also* Memorandum for Kathryn Turman, Acting Director, Office for Victims of Crime, from William Michael Treanor, Deputy Assistant Attorney General, Office of Legal Counsel, *Re*: *Effect of 42 U.S.C. Section 10607 on Proposed Revisions to the Attorney General's Guidelines for Victim and Witness Assistance* at 4 (Jan. 15, 1999) (VRRA's "best efforts" obligation does not create judicially enforceable rights). The legislative record is replete with statements reflecting Congress's particular concern with ensuring that crime victims would have standing to participate in ongoing criminal proceedings. CVRA supporters repeatedly expressed concern regarding the failures of the judicial system to account sufficiently for victims' interests and emphasized the need to give crime victims the opportunity to participate in such proceedings through judicially-enforceable rights.[14] By contrast, the legislative history contains no discussion of the possibility of crime victims bringing independent proceedings to enforce their rights rather than enforcing them in the context of existing, pending criminal proceedings.

**D.**

Particularly given the support for our reading in the text of the Act and its legislative history, we are not persuaded by two arguments that have been presented in support of the view that the rights afforded in the Act were meant to apply in some circumstances before the filing of a criminal complaint.

---

[13] Although the Tenth Circuit's ruling in *McVeigh* figures most prominently in the CVRA's legislative history, Congress was also troubled generally by courts denying victims standing with respect to restitution orders under the VWPA. *See* S. Rep. No. 108-191, at 13 (2003) ("In those rare cases when [victims seek restitution] they face a daunting array of obstacles, including barriers to their even obtaining 'standing' to be heard to raise their claims."). Prior to the CVRA, courts generally denied victims standing to be heard in VWPA cases. *See, e.g.*, *United States v. Johnson*, 983 F.2d 216, 221 (11th Cir. 1993) (crime victim lacks standing under VWPA to challenge denial of restitution order); *United States v. Kelley*, 997 F.2d 806, 808 (10th Cir. 1993) (same). These cases rested in part on a series of Supreme Court decisions denying standing to crime victims more generally. *See, e.g.*, *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981) (because decision to prosecute is solely within discretion of prosecutor, private citizen has no judicially cognizable right to challenge how prosecutor goes about making decision to prosecute); *Linda R.S. v. Richard D*., 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another").

[14] The legislative history reflects a clear concern with a failure to provide crime victims with a meaningful opportunity to participate in criminal proceedings, and consequently the need to create express enforcement mechanisms for the rights. *See, e.g.*, H.R. Rep. No. 108-711, at 2 (2004), *reprinted in* 2004 U.S.C.C.A.N. 2274, 2276 ("Victims of crime often do not feel their voices are heard or that their concerns are adequately addressed in the judicial process. . . . This legislation addresses these concerns by codifying the rights of victims and providing the means to enforce those rights."); 150 Cong. Rec. 7296 (2004) (statement of Sen. Feinstein) ("In case after case we found victims, and their families, were ignored, cast aside, and treated as non-participants in a critical event in their lives. They were kept in the dark by prosecutors to busy to care enough, by judges focused on defendant's rights, and by a court system that simply did not have a place for them."); *id.* at 7297 ("The time has come to give victims of crime the right to participate in the system . . . ."); *id.* at 7298 (statement of Sen. Kyl) (describing the Act as providing crime victims "meaningful participation . . . in the justice system").

Perhaps the most significant argument that the rights guaranteed by the CVRA may apply before the pendency of criminal proceedings comes from the venue provision, which provides that the "rights described in subsection (a) shall be asserted in the district court in which a defendant is being prosecuted for the crime or, *if no prosecution is underway*, in the district court in the district in which the crime occurred." 18 U.S.C. § 3771(d)(3) (emphasis added). The phrase "if no prosecution is underway," understood colloquially, might be thought to envisage the possibility that some CVRA rights may be asserted before the pendency of criminal proceedings against a particular defendant. But "prosecution" is also a legal term of art used to refer to the levying of formal charges, and not merely the issuance of a warrant upon the filing of a complaint, and we think the venue provision should be read in light of this understanding, particularly when considered in the context of the other aspects of the Act discussed above. For instance, Rule 7 of the Federal Rules of Criminal Procedure requires that a felony "be prosecuted by indictment," and therefore any prosecution of a felony must commence with the return of an indictment by a grand jury, Fed. R. Crim. P. 7(a)(1) (or, if the defendant waives his right to indictment, the filing of an information by the Government, *id*. 7(b)). *Cf. United States v. Alvarado*, 440 F.3d 191, 200 (4th Cir. 2006) (stating that, for Sixth Amendment purposes, "[t]he filing of a federal criminal complaint does not commence a formal prosecution").[15] As a result, a "prosecution" does not necessarily commence simply because criminal proceedings have been initiated by the filing of a complaint, although an initial appearance must be held "without unnecessary delay" after a defendant is arrested on a warrant. Fed. R. Crim. P. 5(a)(1)(A) (providing for initial appearance of a person arrested pursuant to a warrant). At such an initial appearance the magistrate judge informs the defendant of his rights, affords him a reasonable opportunity to consult with counsel, and makes an initial determination with respect to the defendant's continued detention. Fed. R. Crim. P. 5(d). Consequently, even before a "prosecution" is "underway," important rights secured by the CVRA may be at stake, including the right of crime victims to be heard with respect to the possible release of the defendant. *See* 18 U.S.C. § 3771(a)(1), (2), (4).[16] Accordingly, we believe the venue provision's reference to the period when a prosecution is not underway is best read as applying to the period of time between the filing of a complaint and the initiation of formal charges.[17]

---

[15] *See also Kirby v. Illinois*, 406 U.S. 682, 688-90 (1972) (for purposes of Sixth Amendment right to counsel, "criminal prosecution" does not commence with filing of complaint and issuance of arrest warrant); *United States v. Pace*, 833 F.2d 1307, 1312 (9th Cir. 1987) (filing of complaint and issuance of arrest warrant do not commence criminal prosecution for Sixth Amendment purposes, but rather, based on Fed. R. Crim. P. 7, "prosecution commenced when the indictment was handed down"). *But see Hanrahan v. United States*, 348 F.2d 363, 366 n.6 (D.C. Cir. 1965) ("In some cases the formal prosecution may begin with the indictment or information. But in others, the prosecution may begin with the filing of a complaint.").

[16] Moreover, when a defendant is arrested outside of the district where the crime occurred, such initial proceedings may not occur in the district where the crime occurred. On this reading, the Act's direction that the victim seek relief "in the district court in the district in which the crime occurred," 18 U.S.C. § 3771(d)(3), would apply during such a period and would sensibly direct the crime victim to the court where the prosecution most likely would ultimately occur, in conformity with Fed. R. Crim. P. 18 ("the government must prosecute an offense in a district where the offense was committed").

[17] Given that we read this provision as consistent with our conclusion regarding when CVRA rights become available, we do not reach the question of whether other periods of time (such as after judgment has been entered and a prosecution is no longer underway) may also satisfy the venue provision of the Act.

Similarly, in our view, section 3771(c)(1) of the Act—which requires those involved in the "detection, investigation or prosecution of crime [to] make their best efforts to see that crime victims are notified of, and accorded, [their CVRA rights]"—does not indicate that the CVRA rights apply before the Government initiates criminal proceedings. As we noted in our 2005 informal advice, these references to detection and investigation tell us about which federal officials have obligations to ensure the protection of victims' rights, not when those rights arise. For example, the role of field agents, that is, those centrally responsible for the detection and investigation of crime, does not stop with the filing of criminal charges. Rather, agents and detectives play an ongoing role throughout the prosecution of a case, including continued investigative efforts and interactions with victims, and, where necessary, assisting in providing protection to victims and witnesses. In particular, agents often develop a relationship of trust with crime victims during the investigation that continues as they assist crime victims in negotiating active criminal proceedings. Given this continuing active role that agents typically play during criminal prosecutions, we find the fact that the CVRA assigns responsibility to them, together with the attorney for the Government, to notify crime victims of and accord them their rights under the CVRA to be entirely consistent with our conclusion that those rights arise only once the Government has initiated criminal proceedings.

Finally, we would note that a contrary view would be in some tension with the CVRA's express disavowal of permitting any interference with our country's long-standing tradition of governmental control of prosecutions.[18] *See* 18 U.S.C. § 3771(d)(6) ("Nothing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction."). Reading the CVRA to empower private individuals to initiate proceedings in court making allegations that a Federal offense occurred prior to the filing of any criminal charges by the Government would, at a minimum, create substantial tension with this tradition. Courts would be required to adjudicate, at a private party's instigation, the factual questions necessary to conclude that an asserted CVRA right should be enforced, including the existence of a Federal offense. Such a court proceeding while the Government's investigation of the crime remains underway, and in the absence of any conclusion by the Government that federal charges are warranted, would place substantial pressure on the Government's prosecutorial charging decisions and may even risk, in some circumstances, impairing the Government's ability to build a viable case. This risk may be particularly apparent in large-scale cases where the Government often relies in part on the assistance of cooperating defendants and depends upon maintaining the secrecy of the ongoing investigation. The legislative history does not suggest that Congress intended such an outcome. To the contrary, both section 3771(d)(6) and the legislative record as a whole suggest that Congress did not intend to impinge upon prosecutorial independence,

---

[18] The principle that the authority to charge criminal offenses is reserved to attorneys for the Government has deep roots that go back to the founding of our Government under the Constitution. *See, e.g.*, Judiciary Act of 1789, ch. 20, § 35, 1 Stat. 73, 92 (establishing office of United States District Attorney with the exclusive power to prosecute "all delinquents for crimes and offenses, cognizable under the authority of the United States"); *see also Respect Due to Consuls*, 1 Op. Att'y Gen. 41, 43 (1794) ("it will be the duty of the district attorney to reduce the presentment into form, and the point in controversy will thus be put in a train for *judicial* determination"); *Heckler v. Chaney*, 470 U.S. 821, 832 (1985) ("[t]he decision of a prosecutor in the Executive Branch not to indict . . . has long been regarded as the special province of the Executive Branch, inasmuch as it is the Executive who is charged by the Constitution to "take Care that the Laws be faithfully executed") (citing U.S. Const. art. II, § 3).

but rather to ensure that once criminal proceedings are initiated, crime victims have rights to be heard and treated fairly in the process, and standing to enforce those rights.

## E.

For these same reasons, we also conclude that rights under the CVRA cease to be guaranteed if all charges in the case are dismissed either voluntarily or on the merits once the dismissal becomes final and the criminal proceedings have ended (or if the Government declines to bring formal charges after the filing of a complaint).  As we have explained, the CVRA's guarantees are premised on the existence of an accused against whom the Government has initiated criminal proceedings with respect to a particular offense or offenses.  Ensuring that victims' interests are protected during the course of those proceedings is the CVRA's core purpose.  In the absence of a proceeding against a particular accused that animates the CVRA's guarantees, the rights guaranteed by the Act would not apply.

For these reasons, we conclude that rights of crime victims under the Crime Victims' Rights Act are not guaranteed until criminal proceedings are initiated by the filing of a criminal complaint or information, or by the return of an indictment, and cease to be guaranteed if all charges in the case are declined or dismissed either voluntarily or on the merits.


/s/


JOHN E. BIES
Deputy Assistant Attorney General